IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD GIULIANI, SR., and | : | CIVIL ACTION |
| RICHARD GIULIANI, JR. | : | NO. 10-7518 |
| | : | |
| v. | : | |
| | : | |
| SPRINGFIELD TOWNSHIP, et al. | : | |

O'NEILL, J.                                                                                                    June 9, 2015

## MEMORANDUM

Now before me is a motion for spoliation sanctions by plaintiffs Richard Giuliani, Sr. and Richard Giuliani, Jr. in which they ask that the Court preclude defendant Springfield Township and the other defendants "from denying either (i) that the individual Defendants had the requisite intent for Plaintiffs' claims; or (ii) that the Defendants gave disparate treatment to Plaintiffs." Dkt. No. 60 at ECF p. 1. Defendants have filed a response, Dkt. No. 61, plaintiffs have filed a reply, Dkt. No. 62, and defendants have filed a surreply. Dkt. No. 63. For the reasons that follow, I will deny plaintiffs' motion.

## BACKGROUND

Plaintiffs are the owners of a property at 50 Oreland Mill Road in Springfield Township, Montgomery County, Pennsylvania. They claim that defendants including Springfield Township "are responsible for engaging in an unremitting campaign of harassment and discrimination, spanning the better part of fifteen years, aimed at divesting Plaintiffs of every economically viable use of their property." Dkt. No. 1 (Compl.) ¶ 1. Plaintiffs allege that since in or around 1997, defendants "have interfered with every attempt by Plaintiffs to lease the Property to tenants, a use permitted and actively engaged in prior to Plaintiffs' purchase of the Property." Id. at ¶ 2. They contend that "Defendants have required Plaintiffs to jump through every hoop

imaginable, including requiring Plaintiffs to continually submit and resubmit unnecessary and burdensome land development plans at Plaintiffs' sole expense to no avail." Id. Plaintiffs assert claims against defendants under 42 U.S.C. § 1983 for alleged violations of their rights under the Fifth and Fourteenth Amendments of the U.S. Constitution, under 42 U.S.C. § 1985(3) for an alleged conspiracy to violate the Fifth and Fourteenth Amendments, and under the laws of Pennsylvania for tortious interference with actual and prospective contractual relations. See Id. at ¶¶ 118-133. Plaintiffs served their complaint on defendants on January 7, 2011.

Relevant here, defendants contend that in June 2009, approximately 18 months before plaintiffs filed this action,

> the Township withdrew its opposition to Plaintiffs' application to use the [relevant] property as a bus terminus. In that month, the Township Zoning Hearing Board granted Plaintiffs' zoning appeal, reversing the Township Zoning Officer's decision that the proposed use of the property was not a permitted use in an I-Industrial District. . . . Shortly thereafter, the Township also withdrew its prosecution of the Giulianis for violation of the zoning ordinance, the Municipalities Planning Code . . . and the March 22, 2006 Court Order which required the Plaintiffs to apply for and secure land development approval before leasing their property to multiple tenants. At that time, Plaintiffs advised the Township that there would only be one tenant, First Student, which would occupy the entire property for its bus storage and depot operation. . . . With the property being leased in its entirety to one tenant, the Township withdrew its opposition and believed that all disputes with the Giulianis had come to an end.

Dkt. No. 61 at ECF p. 14.

After what plaintiffs characterize as a "protracted discovery process," Dkt. No. 60 at ECF p. 3, they now contend that "Defendants have made no substantial or reasonable effort to identify and retain relevant documents" and further, that defendants "concededly have destroyed important documents that were required to be retained pursuant to the terms of Defendants' own document retention policy." Dkt. No. 60 at ECF p. 3. Specifically, plaintiffs claim that

-2-

defendants have spoliated three categories of evidence: internal e-mail correspondence, Dkt. No. 60 at ECF p. 5, certain files related to commercial land development applications for properties in the township other than their own, id. at ECF p. 6-7, and certain Planning Commission Board minutes.[1] Id. at ECF p. 19.

**I.     Emails**

With respect to emails, plaintiffs argue that "Defendants' internal communications would provide the most direct evidence of the state of mind of the individual Defendants." Dkt. No. 60 at ECF p. 4. Plaintiffs contend that defendants' production has been deficient because defendants "provided a miniscule number [of emails] in response to Plaintiffs' [discovery] request[s] – just 24 emails spanning a seventeen-year period of near-constant controversy." Dkt. No. 60 at ECF p. 5. In response, defendants contend that they provided plaintiffs with "a comprehensive Revised Privilege Log that identifies an additional forty-one (41) relevant, but privileged emails" and that "some of those emails . . . were produced by agreement of counsel . . . ." Dkt. No. 61 at ECF p. 16.

Defendants further argue that "[p]laintiffs simply cannot imagine into existence emails that do not, and never did exist." Dkt. No. 63 at 6. They explain that during the time period relevant to this case the Township did not generate large volumes of email. Dkt. No. 61 at ECF p. 10. At his deposition, the Township Manager, Donald Berger was asked: "prior to the time

---

[1] Defendants argue that "[a]lthough Plaintiffs had ample time and opportunity to file a motion to Compel against the Township Defendants, their counsel chose not to do so until after the multiple extensions of the discovery deadline had come to an end." Dkt. No. 61 at ECF p. 3. They assert that "Plaintiffs should have raised this issue while discovery was pending," and ask the question "[w]hy did the Plaintiffs wait until discovery was concluded to raise these issues with the Court?" Id. I cannot answer this question of course. And although I agree that it would have been more appropriate to first raise the issue of the claimed missing evidence in the context of a motion to compel, plaintiffs' failure to bring such a motion does not preclude me from here considering plaintiffs' spoliation motion.

when e-mail started, what was the primary means at that time of how employees communicated internally within the Township?" Dkt. No. 60-3 (Pl.'s Ex. M.) at 86:3-8. He answered "Paper memos and letters. In-house it was all memos and they are all typed." Id. at 86:9-11. Asked then to explain whether "in 2013, [he was] able to estimate what percentage of that internal communication takes place via email now rather than through formal memo," Berger responded,

> You know, . . . it's . . . pretty significant, it's still done in the old-fashioned paper memos or letters. Uhm, the e-mails are more short-term, brief communications, not so much the – that you would document – use more for communications than really for function. Old fashioned memos we use for directives and . . . asking people to perform different things or giving us background, you know, responses on requests to do different projects or programs.

Id. at 86:11-87:3. Defendants also cite the Township's document retention policy which states, in relevant part, "e-mail messages and attachments that do not meet the definition of records and are not subject to litigation and other legal proceedings should be deleted immediately after they are read." Dkt. No. 60-4 (Pl.'s Ex. N.) at ECF p. 12.

Asked about the efforts undertaken by the township to enforce the document retention policy for emails, Berger testified that

> from time to time myself, the assistant manager, and the IT person just kind of walk around and say, go through your emails, and . . . it's a storage issue . . . on the servers. And any nonsensical . . . back-and-forth, are you going to this meeting, . . . how is lunch, you know, get rid of those kinds of e-mails. But of course, if there's any e-mails on there that are of a record, like talked about in the manual, then we retain them.

Dkt. No. 60-3 (Pl.'s Ex. M.) at 40:15-41:2. Asked whether the Township made any efforts to monitor compliance with those requests, Berger answered, "we don't go through the individual computers on a regular basis, no, but the IT person kind of tells us when it looks like so-and-so has an awful lot of e-mails sitting in their folder." Id. at 41:3-10. Plaintiffs argue that "[g]iven

the slipshod manner in which the Township monitors compliance with its document retention policy . . . it is apparent that destruction and spoliation have occurred." Dkt. No. 62 at 8. Plaintiffs have not, however, set forth any concrete proof to show that any e-mails were deleted after this litigation began.

## II.     Other Properties

Plaintiffs' discovery requests sought information about other township properties for "information relevant to show whether the Giulianis were treated differently than other property owners in Springfield Township." Dkt. No. 60 at ECF p. 6. Plaintiffs contend that the land development files they have requested "would provide compelling documentary evidence supporting the inference that Defendants' actions toward Plaintiffs reflected impermissible motivations rather than legitimate governmental interests" "by providing direct evidence of Defendants' disparate treatment of Plaintiffs' land development applications." Dkt. No. 60 at ECF p. 4.

Specifically, in response to a request from plaintiffs for information about Township files pertaining to other properties, defendants explained that "the Township does not maintain a separate file for inspections or complaints regarding specific types of properties (i.e., residential, commercial, industrial, etc.)," but rather organizes its files by particular property. Dkt. No. 60-1 (Ex. F.) at ECF p. 80. Defendants' counsel thus suggested that if plaintiffs could identify properties that "may have been subject to inspections or complaints," then defendants "could have [Township] staff review those or provide the files for [plaintiffs'] review . . . ." Id.

Plaintiffs contend that on May 7, 2013, they requested all documents in the Township's possession with respect to nine specific properties. Dkt. No. 60-1 (Pls.' Ex. G) at ECF p. 83-85. Defendants responded on August 7, 2013 that the documents the Township had previously

produced to plaintiffs were "all that the Township has in response to" the request for documents about those nine properties.  Dkt. No. 60-1 (Pls.' Ex. J) at 104-05.

On August 20, 2013, plaintiffs' counsel wrote to defendants explaining that, in response to a third-party subpoena served by plaintiffs, the Knerr Group had produced documents relating to one of the requested properties that defendants had not themselves produced.  Dkt. No. 60-2 at ECF p. 3.  Plaintiffs contend that "this strongly suggested the existence of additional responsive documents that had yet to be produced by Defendants."  Dkt. No. 60 at ECF p. 9.  Defense counsel responded on August 30, 2013 that

> the Knerr Group's file was not produced . . . because the Township no longer has such a file.  It was discarded long before this litigation because the proposed land development review process eventually resulted in an agreement between the Township and the developer which, in turn, resulted in a waiver.  Therefore there was no need for the Township to retain that file and it had no legal obligation to retain it.

Dkt. No. 60-2 at ECF p. 32.

Plaintiffs contend that despite defendants' contention that they "do not retain files when the Board of Commissioners grants a waiver of the land development process, Plaintiffs have identified thirteen instances out of the fifty-four files listed in Defendants' discovery responses where the Board of Commissioners granted a waiver of the land development process and the files were retained."  Dkt. No. 62 at ECF p. 4 (emphasis in original).  Plaintiffs thus argue that defendants' contention that missing documents and files can be explained by the Township's "adherence to a policy of discarding files wherever a waiver of the land development process is granted is not true," and that "Plaintiffs have been deprived of access to valuable evidence as a direct result" of "document retention policies [that] are and were anything but uniform or consistent . . . ."  Id. at ECF p. 6.  However, plaintiffs have not set forth any proof which would

establish that the Township did not in fact discard the Knerr group files or any other information which plaintiffs' seek with respect to the other properties "long before this litigation."

## III. Planning Commission Board Minutes

Plaintiffs contend that "the Township has failed to produce Planning Commission Board Minutes for the entire years 1996 and 1997, although the Township's retention policy expressly requires that those minutes must be retained permanently."[2] Dkt. No. 60 at ECF p. 19. They also contend that the Township has not produced copies of Planning Commission Board Minutes for December 2000, January and December 2002, November and December 2003, December 2004, November and December 2006, January, February, March, July, October and November 2007, and January 2008. Id.

Defendants contend that "[d]espite a thorough search the Township was unable to locate" the missing minutes. Dkt. No. 61 at ECF p. 21. They argue that "plaintiffs have failed to meet their burden of establishing that [the minutes in question] were lost or misplaced at any time after the Township was served with the Complaint . . . ." Dkt. No. 61 at ECF p. 21. Indeed, plaintiffs have not set forth any proof to show that there is reason to believe that the relevant Planning Commission files went missing only after this litigation began.

## IV. Litigation Hold

Plaintiffs contend that defendants' efforts to preserve evidence were "feeble," resulting in a failure to retain documents. Dkt. No. 60 at ECF p. 10. In support of their argument, plaintiffs cite Berger's testimony that "counsel provided no written instructions of any kind" about the need to preserve documents Id. In fact, Berger testified that he personally approached

---

[2] Defendants contend that "Plaintiffs have yet to explain the relevance of" the minutes between 1996 and 1998. Dkt. No. 61 at ECF p. 21. They argue that "there was virtually no contact between the Plaintiffs and the Township during that period of time."

employees in each department "[f]ace to face. It's a very small building, a very small organization, and I wanted to make sure that they knew what I was looking for." Id. at 21:5-14.

Plaintiffs also cite Berger's testimony that

> when we got notice of the complaint, actually within a few days [defense counsel] called and said he wanted to come out and meet with the staff and myself, and he wanted us to gather up all records whatsoever, related to the Giuliani property and 50 Oreland Mill Road. So we did that. And honestly, within, I don't know, ten days or so we met with [defense counsel]. And he actually took all that material. So a litigation hold was not issued by he or I, but it, in fact, occurred when he took all the Giuliani records with him and he preserved all the records.

Dkt. No. (Ex. M.) at 60-3 at 73:4-17. Plaintiffs contend that, "because the oral instructions were limited to records related to the Oreland Mill Property," Berger's testimony "implicitly concedes that Defendants made no effort at all to retain the documents at issue here (internal e-mail correspondence and the Requested Property files)." Dkt. No. 60 at ECF p. 10. However, Berger testified that although "it was a lot more recent when we found out that [plaintiffs] were interested in other industrial properties," after he learned of the request for the other properties "I told others to gather up all those records and put them aside as well" – "the assistant manager, our office Manager, Code Enforcement, the three people in the Code Enforcement department. . . . [T]hey are the people who would know where they were . . . ." Dkt. No. 60-3 at 74:9-24.

Plaintiffs also contend that they doubt "the thoroughness of Mr. Berger's efforts" because Montgomery Township Commissioner Glenn Schaum testified that Berger did not ask him to search for documents related to the Giulianis. Dkt. No. 60-5 (Ex. O) at 21:10-14. Schaum also testified, however, that he did not remember ever having documents that related to the Giulianis or their property and that he never used email to discuss the Giulianis or the property that they

own. Id. at 21:18-21, 22:4-13.

Plaintiffs also fault defendants for not having asked defendant Amy Montgomery, the Township's engineer, "or anybody at her firm . . . to retain, collect or provide documents related to this litigation." Dkt. No. 60 at ECF p. 11. Defendants counter that Montgomery "testified that her office retained the Giuliani file and the file was produced at her deposition." Dkt. No. 61 at ECF p. 20. They also note that "Plaintiffs never requested a copy of Montgomery's file. Rather they sought all billing records of [her employer,] Boucher & James[,] relating to 50 Oreland Mill Road." Id. Defendants contend that any allegation that [Montgomery] or her engineering firm destroyed documents is absolutely false. Id. at ECF p. 21. Plaintiffs have not set forth any evidence to prove the contrary.

## V. Plaintiffs' Request for Forensic Investigation

In support of their claim that defendants have spoliated evidence, plaintiffs also argue that on October 9, 2013, they "requested that Defendants conduct a forensic investigation of [the Township's] computers, hard drives, servers and other electronic storage locations." Dkt. No. 62 at 10, citing Dkt. No. 60-10 (Ex. R.) at ECF p. 159-161. Defendants contend that they responded to plaintiffs' request during an October 17, 2013 phone call wherein defense counsel "informed Plaintiffs' counsel that Defendants would not voluntarily consent to such an examination." Dkt. No. 63 at 8. As defendants contend, "had plaintiffs sincerely believed that they were entitled to a forensic investigation of the Township's computer system, they could have file a motion to compel." Id. at 9. Plaintiffs never filed such a motion.

## DISCUSSION

In considering plaintiffs' motion for spoliation sanctions, I must first determine whether defendants' conduct constitutes spoliation. See Omogbehin v. Cino, 485 F. App'x 606, 610 (3d

Cir. 2012) ("The spoliation analysis is separate from any analysis regarding spoliation sanctions."). Only if I find that defendants have spoliated evidence must I consider whether sanctions are appropriate to redress the situation and, if so, what sanctions should be imposed.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Paramount Pictures Corp. v. Davis, 234 F.R.D. 102, 111 (E.D. Pa. 2005). Spoliation occurs whenever: (1) the evidence was in the party's control, (2) the evidence is relevant, (3) there was "actual suppression or withholding of the evidence," and (4) "the duty to preserve the evidence was reasonably foreseeable to the party." Bull v. United Parcel Serv., Inc., 665 F.3d 68, 79 (3d Cir. 2012), citing Brewer v. Quaker St. Oil Ref. Corp., 72 F.3d 326, 334 (3d Cir. 1995). "'As a general rule, the burden of proof on a spoliation claim lies with the party asserting that spoliation of evidence has taken place.'" Nwegbo v. Colwyn Borough, No. 12-05063, 2013 WL 3479430, at *1 (E.D. Pa. July 11, 2013), quoting Byrnie v. Town of Cromwell, Bd. of Ed., 243 F.3d 93, 107-08 (2d Cir. 2001). Applying the Bull factors, I find that plaintiffs have not shown that defendants' conduct constitutes spoliation.

First, I agree with plaintiffs' contention that "the emails and property files at issue here relate directly to the central factual issues Plaintiffs must establish to succeed on their claims." Dkt. No. 60 at ECF p. 21. I also find that, to the extent the evidence which plaintiffs seek ever in fact existed, it was under defendants' control.[3]

---

[3] Plaintiffs contend that "[t]he missing evidence (e-mails and property files) plainly were within the control of Defendants." Dkt. No. 60 at ECF p. 20. Defendants counter that the allegedly missing emails "never were in the Defendants' control" because there is no "pro[of] that the allegedly missing emails ever existed in the first place." Dkt. No. 61 at ECF p. 24. Defendants further contend that while at one time the Knerr Group documents may have been in their control, they "were likely discarded in accordance with the Township's document retention

Whether defendants had a foreseeable duty to preserve the evidence which plaintiffs seek is another question. "A duty to preserve is not triggered [ ] at the mere onset of a potential claim or litigation, but litigation need not be imminent either. The obligation to preserve evidence arises when t*he party has notice* that the evidence is *relevant* to litigation . . . as for example when a party should have known that the evidence may be relevant to future litigation." Rogers v. Allstate Ins. Co., No. 11-7776, 2012 WL 5250513, at *5 (E.D. Pa. Oct. 23, 2012) (emphasis in original) (quotation marks and citations omitted). The question of reasonable foreseeability is a "flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." Bull, 665 F.3d at 78 (citation omitted)

Defendants contend that when plaintiffs filed their complaint on January 7, 2011, "Defendants believed that all of the outstanding issues related to Plaintiffs' land development applications had finally been resolved." Dkt. No. 61 at ECF p. 14. They argue that prior to the date on which they were served with plaintiffs' complaint, "civil rights litigation arising out of Plaintiffs' land development application was simply not foreseeable to any of the Defendants." Dkt. No. 61 at ECF p. 14.

Plaintiffs counter that "it might have been unreasonable for Plaintiffs to expect the production of documents related to all properties in the Township. But certainly it is foreseeable that Plaintiffs would wish to review files related to industrial-zoned properties like the Oreland Mill Property." Dkt. No. 60 at ECF p. 18. They argue that the missing planning board commission minutes "emanate from a time period when there were active disputes pending between Plaintiffs and Defendants . . . ." Id. at ECF p. 22. Plaintiffs' arguments are not

---

policy and practices ten or eleven years before this litigation was even contemplated." Dkt. No. 61 at ECF p. 24.

sufficient to meet their burden to show that defendants' duty to preserve files related to other properties, emails or planning commission board minutes was triggered at any time prior to the commencement of this action. They have not set forth any reason why I should disbelieve "the Township's assertion that it had absolutely no reason to anticipate litigation until it was served with the Complaint on January 7, 2011," Dkt. No. 63 at 2, and that in June 2009, "with the property being leased in its entirety to one tenant, the Township . . . believed that all disputes with the Giulianis had come to an end." Dkt. No. 61 at ECF p. 14. Accordingly, I find that defendants cannot be sanctioned for spoliation of any evidence which was lost, misplaced, discarded, deleted or destroyed prior to January 7, 2011.

Finally, contrary to plaintiffs' assertion that "negligent destruction of relevant evidence can be sufficient to give rise to the spoliation inference," Dkt. No. 60 at ECF p. 16 (citation and quotation omitted), it is now settled that "[o]rdinary negligence does not suffice to establish spoliation." First Sr. Fin. Grp. LLC v. Watchdog, No. 12-1247, 2014 WL 1327584, at *7 (E.D. Pa. Apr. 3, 2014); see also Kachigian v. Berkshire Life Ins. Co. of Am., No. 09-6217, 2013 WL 1338288, at *4 (D.N.J. Apr. 1, 2013) ("actual suppression requires more than ordinary negligence"). The Court of Appeals for the Third Circuit has found that "a finding of bad faith is pivotal to a spoliation determination." Bull, 665 F.3d at 79. Spoliation does not occur where "the destruction was a matter of routine with no fraudulent intent." Bull, 665 F.3d at 79.

Plaintiffs have not met their burden to establish that defendants actually suppressed the evidence they seek. At most, defendants lost or deleted the evidence plaintiffs seek as the result of mere inadvertent negligence. Plaintiffs have not set forth any proof that defendants in fact failed to preserve emails, documents relating to other properties or Planning Commission Board Minutes at any time after January 7, 2011.

Further plaintiffs have not shown that defendants had any ill motive or bad intent in failing to retain the documents which plaintiffs seek. Plaintiffs have not provided me with any reason to disbelieve defendants' contention that "any destruction or non-retention of documents regarding [the Knerr property or any of the other properties] occurred long before there was any dispute between the Township and the Giulianis which eventually resulted in this lawsuit." Dkt. No. 61 at ECF p. 9. On the record before me, the destruction of these documents was motivated not by bad faith, but by defendants' belief, correct or otherwise, that that the Township has no a legal obligation to retain documents relating to a property's land development application once there has been a waiver of the land development process for a property. Dkt. No. 60-2 at ECF p. 32. Nor is there record proof which would cause me to find that defendants acted with bad faith in deleting any emails or misplacing any planning commission board minutes. In particular, Berger's testimony with respect to the Township's implementation of its document retention policy regarding emails does not show any intent to suppress evidence. To the contrary, his testimony suggests only that the deletion of emails was a result of "inadvertence, negligence, inexplicable foolishness, or part of the normal activities of business or daily living." Bozic v. City of Washington, Pa., 912 F. Supp. 2d 257, 270 (W.D. Pa.2012); see Heck v. Mem'l Health Sys., No. 10-1675, 2012 WL 3597175, at *2 (M.D. Pa. Aug. 20, 2012) (finding no spoliation where the "Plaintiff stated at her deposition that the calendar had merely been misplaced, and that she did not keep detailed records of her job applications, such as printed records or copies of newspaper advertisements, because she was not aware at the time that she needed to document or journal them") (internal quotation and alteration omitted). Because a finding of spoliation requires more than mere negligence I cannot here conclude that there has been spoliation of evidence given the absence of evidence that there was some bad intent or ill motive behind

defendants' failure to preserve the requested evidence.[4] Accordingly, I will deny plaintiffs'

motion for spoliation sanctions.

      An appropriate Order follows.

---

[4] Even if defendants' actions constituted spoliation, negligent spoliation is insufficient to merit the sanctions plaintiffs seek. The decision of whether to sanction a party found liable for spoliation is left to my discretion. Ward v. Lamanna, 334 F. App'x 487, 492 (3d Cir. 2009); see also Paramount Pictures, 234 F.R.D. at 111 ("There is no rule of law mandating a particular sanction upon a finding of improper destruction or loss of evidence; rather, such a decision is left to the discretion of the Court."). In determining whether spoliation should result in an adverse inference instruction "that the destroyed or altered evidence might or would have been unfavorable to the offending party," Freeman v. Dep't of Corr., No. 07-2191, 2011 WL 94422, at * 1 (M.D. Pa. Jan.11, 2011), I should consider: "(1) the degree of fault of the party who altered or destroyed the evidence, (2) the degree of prejudice suffered by the opposing party, and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party, and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994). Importantly, "a finding of fault requires evidence that the party accused of spoliation intended to impair the moving party's ability to uncover evidence." Select Med. Corp. v. Hardaway, No. 05-3341, 2006 WL 859741, at * 9 (E.D. Pa. Mar. 24, 2006). Plaintiffs have not set forth any evidence of defendants' intent to impair plaintiffs' case through the withholding or destruction of evidence. "A court will not grant an unfavorable inference when the evidence in question has been lost or accidentally destroyed . . . ." Id., citing Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 334 (3d Cir. 1995); see also 29 Am. Jur. 2d Evidence § 177 ("Such a presumption or inference arises, however, only when the spoliation or destruction [of evidence] was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent.").